# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VINCENT DERITIS,<br><br>Defendant. | 5:21CR0042-KDB |

**DEFENDANT'S SENTENCING MEMORANDUM**

Vincent Deritis ("Deritis"), by and through his counsel of record, W. Kelly Johnson, Assistant Federal Public Defender, submits the following Sentencing Memorandum.

**I.     Mr. Deritis asserts that there are factors that may warrant a sentence outside of the advisory guidelines system.**

Counsel asserts that the decision in *United States v. Farley*, 36 F.4 1245, 1252-53 (10th. Cir. 2022) requires this Court to consider a downward variance, based upon the maximum guideline provided by the guideline chart, which is 43. The 10th Circuit Court of Appeals concluded that any variance which used a guideline score above the maximum of 43 was plain error. The *Farley* court found that when considering the appropriateness of a downward variance, the "appropriate starting point would have been the PSR offense level of 43". Id. at 1253.

Specifically, a downward variance is appropriate because Mr. Deritis' guidelines would be lower if he were a recidivist sex offender. Mr. Deritis receives a five-level enhancement under § 4B1.5(b) as a "repeat and dangerous sex offender" even though he has no prior criminal history

of any kind – much less any prior sex convictions – and even though his entire history of misconduct is encompassed by the indictment and accounted for by the Chapter Two guidelines.

Ironically, if Mr. Deritis had been previously charged and convicted of any of the acts underlying the current charges, and then had been released and committed the remaining instant conduct, he would not be subject to the § 4B1.5 enhancement. With such a prior conviction, § 4B1.5 would require a minimum total offense level of 31 (*see* § 4B1.5(a)(1)(B)(ii)) and a criminal history category of V (*see* § 4B1.5(a)(2)(B)). Since the Chapter 2 & 3 offense level would be higher than that required by § 4B1.5(a)(1)(B)(ii)), his criminal history category would be increased to V, but the five-level enhancement would not apply. In other words, if he had a prior qualifying sex conviction, his guideline range would likely be lower than it is now, not higher.

It should come as no surprise that the addition of this five-level enhancement was not the product of the Sentencing Commission's characteristic expertise. Rather, it was enacted by direct Congressional action at a time when the base offense level under § 2G2.1 was five levels lower than it is now, *see* USSG § 2G2.1(a) (Nov. 1, 2001) (base offense level 27); USSG App. C, amend. 615 (Nov. 1, 2001).

> [A] Guideline is likely to reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives *only* when it is the product of empirical data and national experience, guided by a professional staff with appropriate expertise.

*United States v. Grober,* 624 F.3d 592, 608 (3d Cir. 2010) (emphasis added); *United States v. Arrelucea–Zamudio*, 581 F.3d 142, 155 n. 12 (3d Cir. 2009).

> [D]eference to the Guidelines is not absolute or even controlling; rather, like our review of many agency determinations, the weight of such a judgment in a particular case will depend upon the thoroughness evident in [the agency's]

consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*United States v. Dorvee,* 616 F.3d 174, 188 (2d Cir. 2010) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)) (quotation marks omitted).

The problems with the child pornography guidelines –

– are the result of the Guideline having been 'developed largely pursuant to congressional directives,' as opposed to the Sentencing Commission's expertise. *United States v. Grober,* 624 F.3d 592, 608 (3d Cir. 2010); *see also id.* ("[T]o say that the final product is the result of Commission data, study, and expertise simply ignores the facts."). Congress has been particularly active in directing the Commission to increase base offense levels and impose various enhancements, which has resulted in a dramatic rise in penalties over the years. These changes have taken place in the face of resistance by the Commission, and in the form of Congress taking the unprecedented step of directly amending the Guidelines. Thus, like the former crack cocaine Guidelines, the child pornography Guideline does not exemplify the Commission's exercise of its characteristic institutional role, which is to propose penalties based on its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.

*United States v. Helton,* 782 F.3d 148, 158 (4th Cir. 2015) (Gregory, J., concurring) (quoting U.S. Sentencing Comm'n, *The History of the Child Pornography Guidelines* 1 (2009) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/ research-projects-and-

surveys/sex-offenses/20091030_History_Child_Pornography_ Guidelines.pdf); *Kimbrough v. United States,* 552 U.S. 85, 108-09 (2007)) (quotation marks and brackets omitted).

More so than even the much-criticized Chapter Two child pornography guidelines, the structure of the directly-enacted § 4B1.5 enhancement creates absurd results, sometimes punishing first offenders more severely than the repeat sex offenders at which it is explicitly directed. In fact, at the time of enactment, the result would have been to raise Mr. Deritis' offense level to exactly where it would now be without the enhancement. Accordingly, this Court should vary to the range Mr. Deritis would face without the enhancement.

## II. Sentencing Letters

Further, Mr. Deritis submits the attached letters from family (Exhibit 1 and 2), in mitigation of any sentence this Court might impose at his sentencing hearing. These letters are relevant to the Court's inquiry into "the history and characteristics of the defendant" pursuant to 18 U.S.C. § 3553(a) (1).

## III. Pathway to Achieve Courses

Mr. Deritis submits the attached transcript of Pathway to Achieve courses that he completed while housed at the Catawba County Detention Center (Exhibit 3).

### CONCLUSION

For the foregoing reasons, Mr. Deritis respectfully requests that this Court find that any sentences imposed in this case run concurrently to each other and that 360 months is the appropriate sentence under § 3553(a).

Respectfully submitted,

*/s/ W. Kelly Johnson*
W. Kelly Johnson
OH Bar No. 0037241
Assistant Federal Public Defender
129 West Trade Street, Suite 300
Charlotte, NC  28202
Phone: (704) 374-0720
Fax: (704) 374-0722
Email: w_kelly_johnson@fd.org

***Counsel for Vincent Deritis***

Date:   February 20, 2023.